# IN THE COURT OF APPEALS OF IOWA

No. 22-0361
Filed April 27, 2022

IN THE INTEREST OF B.D. and C.D.,
Minor Children,

C.D., Father,
       Appellant.
_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

A father appeals the termination of his parental rights to two children. **AFFIRMED.**

Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Kimberly Opatz of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by May, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights to two children, claiming the juvenile court should have granted concurrent jurisdiction to afford the father the opportunity to pursue a bridge order. The father also claims the juvenile court should have applied a permissive exception to preclude termination. As the children were not safely placed with a parent, a bridge order was not appropriate in lieu of termination. And we, like the juvenile court, decline to apply either of the permissive exceptions urged by the father to preclude termination. Accordingly, we affirm.

## I.    Background Facts & Proceedings

B.D., age eleven, C.D., age five, came to the attention of the Iowa Department of Human Services (DHS) based on an incident that occurred on January 15, 2019.[1] Police were called due to concerns over domestic violence between the parents, as well as drug use by the father. B.D. ran to a friend's house for help because her parents were fighting. The father struck the family's dog with a rod and damaged a car while leaving the house. A few days later, law enforcement was required to subdue the father, and he was placed on a forty-eight hour psychological hold. He tested positive for methamphetamine.

By stipulation of the parties, B.D. and C.D. were adjudicated as children in need of assistance (CINA) on March 8, 2019, pursuant to Iowa Code section 232.2(6)(c)(2) and (6)(n) (2019). Shortly after the adjudication, C.D.'s drug test came back positive for methamphetamine. Around the same time, B.D. told

---

[1] The family has prior involvement with DHS based on allegations of domestic abuse from 2012 and 2018.

DHS that her father was spending the night at the home with the mother and the children contrary to DHS directives. Based on the results of C.D.'s drug test, the father's continued access to the children, and ongoing concerns over the father's erratic behavior and methamphetamine use, the children were removed from parental custody on March 19. The children's custody was placed with DHS. They resided with their maternal grandmother.

The mother was granted a trial home placement while living with the maternal grandmother. The mother regained custody of both children on December 11. The father was not allowed on the mother's premises when the children were present and could only see the children during supervised visits.

However, DHS discovered in early June 2020 that the father had been residing at the mother's home despite court orders preventing his unsupervised contact with the children. As a result, an order was issued that barred the father from being on the mother's property. The State requested an emergency removal order for both children. The children were removed for a second time on June 15, with custody placed with DHS for the purpose of foster care or relative placement. The children were again placed with their maternal grandmother, although the mother was not allowed to live with the maternal grandmother and the children. Nearly a year later, on June 4, 2021, the children began a second trial home placement with their mother. The children remained in this trial home placement at the time of the termination hearing.

Throughout the underlying CINA proceedings, the father refused to engage in services to treat his substance-abuse and mental-health problems. He completed less than one percent of the offered drug tests. The father was

unsuccessfully discharged from a substance-abuse program. Caseworkers observed behavioral indicators of the father's drug use during visits with his children, including dilated eyes and the wearing of sunglasses inside. The father testified at the termination hearing that he uses methamphetamine to help with his self-diagnosed attention-deficit/hyperactivity disorder (ADHD). He does not believe his drug use impacts his ability to parent and denies ever using methamphetamine while caring for the children. He conceded that he last used methamphetamine about a month before the termination hearing and that he used marijuana a few weeks prior to the termination hearing.

The father also failed to meaningfully address his mental-health issues. During an evaluation in June 2019, he was diagnosed with an adjustment disorder with mixed anxiety and depressed mood, antisocial traits, and an unspecified personality disorder. He failed to pick up his prescribed medication to address these concerns following this evaluation.

The father participated in seventy-two percent of the available visits with his children. However, he was described as aloof during most visits. When he did interact with the children, he did not do so in a positive manner. Instead, he would focus on negative aspects of his children's behavior. During supervised visits he both threatened to strangle one of the children and referred to one of his children as "a little fucker." The father never progressed beyond fully supervised visits.

At the termination hearing, the father argued that he had been working on his anger. Such anger is frequently, although not exclusively, exhibited while he is under the influence of methamphetamine. Caseworkers assigned to the case expressed apprehension about discussing matters that could upset the father

because they believed he was dangerous. One caseworker expressed fear that her testimony at the termination hearing would anger the father. Due in part to the potential threat to caseworkers, visits between the father and the children were conducted in a public location. And caseworkers were not singled out for the father's aggression, as the father expressed an intent to contact a motorcycle gang to make the assistant county attorney assigned to the case "disappear."

As to the children's mother, the father continued the repeated violations of the no-contact order, including sending threats of suicide. On one occasion, he sent the mother pictures of the father drinking what appeared to be anti-freeze. On another occasion, he sent a picture of his wrist evidencing a cut. The children discovered a handgun in their father's motorcycle bag during a visit. The father told caseworkers that they were not in danger but the mother might be. On another occasion, the father gave C.D. a bracelet and ring to give to the mother, thereby forcing one of the children to participate in the father's violation of the no-contact order. Prior to the termination hearing, DHS worked to develop "extensive" safety plans for the mother in the event the father's parental rights were terminated.

A hearing was held on September 2 and 14 concerning the State's petition to terminate the father's parental rights.[2] The juvenile court terminated the father's parental rights to both children pursuant to Iowa Code section 232.116(1)(f) and (1)(*l*) (2021). The father appeals.

---

[2] Since October 2020, the mother has made progress to complete her case plan. The State did not move to terminate her parental rights as part of this proceeding.

## II.     Standard of Review

"We review termination of parental rights proceedings de novo.  While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility.  [O]ur fundamental concern on review is the child's best interests."  *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021) (alteration in original) (internal citations and quotation omitted) (quoting *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020)).

## III.    Discussion

We follow a well-established three-part test when reviewing the termination of parental rights.  First, the court must decide whether a ground exists for termination under section 232.116(1).  *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Second, we determine whether termination is in the children's best interest.  *Id.* Finally, the court must consider whether to apply an exception to termination under section 232.116(3).  *Id.*

The father claims the juvenile court erred by failing to grant his application for concurrent jurisdiction.  He also claims the court should have applied a statutory exception to save the parent-child relationship.  Because the father does not contest whether a statutory ground for termination exists or whether termination was in the children's best interests, we do not address those issues.  *See id.* at 40.

### A.      Concurrent Jurisdiction and a Bridge Order

The father filed an application for concurrent jurisdiction on April 20, 2021, claiming it was a necessary step to obtaining a bridge order.  The juvenile court denied the application on April 22, finding the order was "unnecessary."  The father argued at the termination hearing that a bridge order would achieve the same goals

of protecting the children without having to permanently deprive him of his parental rights.

The court correctly found the application was unnecessary. Juvenile courts generally have exclusive jurisdiction over proceedings involving a child in need of assistance. *See* Iowa Code § 232.61(1). Section 232.103A(1) permits a juvenile court to "close a [CINA] case by transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a bridge order." Concurrent jurisdiction is not a necessary component to complete a bridge order. Therefore, the application for concurrent jurisdiction was, as noted by the juvenile court, unnecessary.

In any event, this record does not support the entry of a bridge order. Section 232.103A(1) sets out six criteria that all must be met to qualify for a bridge order:

> a. The child has been adjudicated a child in need of assistance in an active juvenile court case, and a dispositional order in that case is in place.
> b. Paternity of the child has been legally established, including by operation of law due to the individual's marriage to the mother at the time of conception, birth, or at any time during the period between conception and birth of the child, by order of a court of competent jurisdiction, or by administrative order when authorized by state law.
> c. The child is safely placed by the juvenile court with a parent.
> d. There is not a current district court order for custody in place.
> e. The juvenile court has determined that the child in need of assistance case can safely close once orders for custody, physical care, and visitation are entered by the district court.
> f. A parent qualified for a court-appointed attorney in the juvenile court case.

On our close review of this record, we conclude the evidence does not support a determination that the children were safely placed with a parent under

subsection (c). While the children were in a trial home placement with their mother, DHS retained custody of the children. And while no parties supported the termination of the mother's rights at the present time, DHS had no plans to close the case regardless of whether the father's parental rights were terminated. Additionally, a DHS employee assigned to the case testified that the case could not be safely closed by a bridge order. *See* Iowa Code § 232.103A(1)(e); *In re L.M.*, No. 19-0426, 2019 WL 2373649, at *3 n.2 (Iowa Ct. App. June 5, 2019) ("We find continued concerns for the children's safety precluded the use of a bridge order . . . ."). We determine a bridge order is not appropriate on this record.

### B. Section 232.116(3) Exceptions

The father claims the juvenile court should have applied one of the exceptions to termination in section 232.116(3) to preclude termination of his parental rights. In particular, he points to the children's placement with a relative, the children's mother, and the close bond he shares with the children.

"The factors weighing against termination in section 232.116(3) are permissive, not mandatory." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). We may use our discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* (quoting *D.S.*, 806 N.W.2d at 475). The parent resisting termination bears the burden of establishing an exception applies. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).

The father claims the children's placement with their mother should preclude termination. *See* Iowa Code § 232.116(3)(a). "But this exception can

come into play only when a relative has 'legal custody.'" *A.B.*, 956 N.W.2d at 170. DHS has legal custody while the children are at a trial home placement with the mother.[3] Thus, the exception does not apply.

The father also claims his close bond with the children should prevent termination. *See* Iowa Code § 232.116(3)(c). Courts may use this exception when "there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.*

The father highlights a caseworker's testimony that should termination occur, B.D. "is going to need the support of probably reengaging in therapy." While the children love their father, the father was uninterested in the children during visits. During visits, the children and their father were merely "occupying the same space and doing the same thing," but not engaging with one another. The father tended to focus on negative aspects of his children during visits. The children did not ask about their father when he missed visits, and the bond between the children and the father was lessening. Finally, it was not clear to caseworkers if B.D. feigns love and attention for her father to placate him out of fear of a violent response. On this record, we question the strength of the bond between the children and father.

Even assuming the existence of a close bond between the children and their father, this record lacks evidence that termination would be detrimental to the children. The father has failed to complete substance-abuse treatment or engage

---

[3] The father acknowledges the absence of legal custody with the mother but urges an extension of this permissive exception to include placement with the mother. Given the absence of any cited authority, we decline this invitation.

in services for his mental-health struggles. He conceded at trial that he used illegal substances within the month prior to the termination hearing and stated that he believed his drug use did not impact his ability to parent. Throughout the period in which the CINA case was open, the father violated the no-contact order prohibiting him from contact with the mother. The father has not demonstrated any progress on his issues involving drug use, mental health, and violence. The father has largely been uninvolved in the children's lives since the CINA proceedings began in 2019.

The father's aggression has not been without consequences to the children's well-being. B.D. informed providers that she was concerned her father would kill her mother. Similarly, B.D. informed another provider that she did not want to visit her father but was worried about what would happen to her brother if she did not attend. Caseworkers testified that the father's behavior has caused B.D. to lack feelings of stability and safety, resulting in the child lashing out violently at the relative placement.

Given the inapplicability of Iowa Code section 232.116(3)(a) and the determination that any bond with the children is insufficient to preclude termination of the father's parental rights, we decline to apply either of the permissive exceptions urged by the father.

**AFFIRMED.**